IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
JASMINE E. GOLDEN,                  )
                                    )
            Plaintiff,              )
                                    )
      v.                            )     1:23CV381
                                    )
NORTH CAROLINA AGRICULTURE AND      )
TECHNICAL UNIVERSITY,               )
                                    )
            Defendants.             )
```

### MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge for a recommendation on Defendant's Motion to Dismiss (Docket Entry 5; see also Docket Entry 6 (Brief in Support)). (See Docket Entry dated Aug. 1, 2023.) For the reasons that follow, the Court should grant in part the instant Motion, in that the Court should dismiss all of Plaintiff's federal claims under Federal Rule of Civil Procedure 12(b)(6) and should decline to exercise supplemental jurisdiction over any of her state claims under 28 U.S.C. § 1367(c)(3).

### Introduction

Plaintiff commenced this action in state court by filing a pro se Complaint (Docket Entry 7), followed by a Supplement (Docket Entry 7-1). According to the Complaint, "[Plaintiff] was hired with [the] OARS [Department] at [Defendant] for a contract period of August 18, 2022 to June 30, 2023 . . . ." (Docket Entry 7 at

1.)  The Complaint "assert[s] that [Plaintiff's supervisor] along with others acted directly and indirectly with malice and discriminatorily to short [Plaintiff] for services rendered, including [her] holiday bonus" (id. at 2) and also "assert[s] that [Plaintiff's supervisor] and others unfairly and discriminatorily terminated [Plaintiff's] employment on the basis of [her] race, gender, [and] age . . . as well as for other possible unknown or nefarious reasons" (id.).  The Supplement, in turn, expressly invokes a federal statute (codified at 42 U.S.C. §§ 2000e-2000e-17), "Title VII of the Civil Rights Act of 1964" (Docket Entry 7-1 at 1 (bold font omitted)), and then states:

> [Plaintiff] was the target of repeated discriminatory acts and human and civil rights violations on the part of employees of [Defendant] and [Defendant's] OARS Department between August 18, 2022 and December 20, 2022, including discriminatory hiring practices; impeding necessary employment growth, including social networking; and withholding fringe benefits of employment in repeated acts of discrimination and malice.

(Id. at 1-2 (missing space added); see also id. at 8 ("Plaintiff was clearly the subject of continued and multiple discriminatory actions and discriminatory hiring practices, as well as human rights and civil rights violations on the part of various employees of [Defendant], including [Plaintiff's supervisor] . . . .").)

Defendant subsequently removed this action to this Court "because the action arises under the laws of the United States" (Docket Entry 1 at 4) and contemporaneously "move[d] th[is] Court to dismiss all claims against [Defendant] under Rules 12(b)(1) and

2

12(b)(6) of the Federal Rules of Civil Procedure" (Docket Entry 5 at 1). Plaintiff responded (see Docket Entry 14 (the "Response")) and Defendant replied (see Docket Entry 16 (the "Reply")).[1]

## **Discussion**

Defendant's Brief in Support argues that "the Court should dismiss Plaintiff's federal law claims for failure to state claims upon which relief can be granted." (Docket Entry 6 at 2.) Liberally construed[2] (and as summarized by Defendant), the Complaint and Supplement together assert federal claims against Defendant for "discriminating against [Plaintiff] based on her race, sex, and age" (id. at 1), by:

1) "engag[ing] in discriminatory hiring practices because [Defendant] hired an African American male co-worker to a position for which [Plaintiff] claims she also applied" (id.; see also Docket Entry 7 at 1 ("[Plaintiff's supervisor and] all [others working in the OARS Department] except [Plaintiff were people] of color and clearly African American. . . . On Thursday, December

---

[1] As the Reply notes, the Response largely "restates the allegations made in [the] Supplement" (Docket Entry 16 at 1-2). (Compare Docket Entry 7-1 at 1-8, with Docket Entry 14 at 1-10.) The Reply also correctly contends that, in adjudicating the instant Motion, "the Court cannot consider facts newly alleged in [the] Response" (Docket Entry 16 at 2 n.1). See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 449 (4th Cir. 2011).

[2] Because Plaintiff filed this action pro se, the Court must "construe h[er] pleadings liberally." Bing v. Brivo Sys., LLC, 959 F.3d 605, 618 (4th Cir. 2020) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)).

15th, 2022, [Plaintiff's supervisor] announced a permanent hire had been made to the OARS Department . . . . The individual hired to the permanent position happened to be African American and male. . . . [Plaintiff] had applied for the permanent position; however, [she] never received acknowledgement [sic] of [her] application nor any word in response to [her] application despite several attempts . . . to follow up on the position."); Docket Entry 7-1 at 1-2 (generally alleging "discriminatory hiring practices"), 4-6 (discussing hiring of Plaintiff's African-American, male co-worker for permanent position Plaintiff sought), 8 ("Plaintiff was clearly the subject of . . . discriminatory hiring practices . . . ."));

2) "discriminat[ing] against [Plaintiff] when [Defendant] made a late[/lower] payment of her wages on one occasion and a late payment of a holiday bonus" (Docket Entry 6 at 1; see also Docket Entry 7 at 1 ("In October 2022, [Plaintiff's supervisor] neglected to approve [Plaintiff's] timesheet causing [her] payroll to be missed. [She] was forced to accept a 'sub-pay option' [and] . . . never received [her] full pay . . . . [Later, she did] not receive[] the holiday bonus marked for temporary employees."), 2 ("assert[ing] that [Plaintiff's supervisor] along with others acted . . . discriminatorily to short [Plaintiff] for services rendered, including [her] holiday bonus . . . which was eventually received after the holidays . . . only because [she] contacted Human

4

Resources"); Docket Entry 7-1 at 2-4 (discussing delayed/reduced paycheck), 7-8 (discussing delayed holiday bonus)); and

3) "discriminat[ing] against [Plaintiff] . . . when it terminated her employment" (Docket Entry 6 at 1; see also Docket Entry 7 at 1 ("On December 20th, 2022, [Plaintiff] received an office email notifying that our [sic] keys and all work issued apparatuses be returned before the holiday break. . . . [Later that day, Plaintiff's supervisor told Plaintifff] that 'this temporary position is no longer needed' – 'no discussion.'"), 2 ("assert[ing] that [Plaintiff's supervisor] and others unfairly and discriminatorily terminated [Plaintiff's] employment on the basis of [her] race, gender, [and] age – as [she] was clearly the only White employee in the OARS Department"); Docket Entry 7-1 at 6-7 (discussing termination of Plaintiff's temporary position)).

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a plaintiff must plead enough factual allegations 'to state a claim to relief that is plausible on its face.'" Bing v. Brivo Sys., LLC, 959 F.3d 605, 616 (4th Cir. 2020) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint, not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Id. (internal quotation marks omitted). "Thus, when considering a motion to dismiss, a court must consider the factual allegations in

5

the complaint as true and draw all reasonable inferences in favor of the plaintiff."  Id.  "But importantly, [pleading a plausible claim] 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[ ] will not do.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)); see also Iqbal, 556 U.S. at 678 ("[The pleading standard] demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. . . .  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Finally, to avoid dismissal for failure to state a claim, "[a] complaint must contain 'factual allegations sufficient to raise a right to relief above the speculative level.'"  Bing, 959 F.3d at 616 (internal brackets and ellipsis omitted) (quoting Twombly, 550 U.S. at 555); see also Iqbal, 556 U.S. at 678 ("The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).[3]

Accordingly, at the pleading stage, "a Title VII plaintiff is 'required to allege facts to satisfy the elements of a cause of action created by that statute.'"  Bing, 959 F.3d at 616 (quoting

---

 3 These pleading standards apply in this case notwithstanding Plaintiff's pro se status.  See Bing, 959 F.3d at 618.

6

McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015)).[4] "The pertinent statute, Title VII, prohibits an employer from 'discharging [or refusing to hire] any individual, or otherwise discriminating against any individual with respect to his [or her] compensation . . . because of such individual's race [or sex].'" Id. at 616-17 (internal brackets omitted) (quoting 42 U.S.C. § 2000e-2(a)(1)). In parallel fashion, another federal statute, the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634, "prohibits employers from refusing to hire, discharging, or otherwise discriminating against any person who is at least 40 years of age because of the person's age." Equal Emp. Opportunity Comm'n v. Baltimore Cnty., 747 F.3d 267, 272 (4th Cir. 2014) (internal quotation marks omitted).

---

4 "Ultimately, a plaintiff bringing an employment discrimination claim . . . must provide supporting evidence through one of two methods: (1) direct or circumstantial evidence that discrimination motivated the employer's adverse employment decision, or (2) the *McDonnell Douglas* pretext framework . . . ." Bing, 959 F.3d at 616 n.8 (internal quotation marks omitted). Under the latter method, a plaintiff first must "prove a prima facie case of discrimination," id.; see also Ennis v. National Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995) ("In general terms, a plaintiff establishes a prima facie case by proving a set of facts which would enable the fact-finder to conclude, in the absence of any further explanation, that it is more likely than not that the adverse employment action was the product of discrimination. To assist in the practical application of the standard, [courts] have on occasion specified more precisely the elements of the prima facie case, depending on the factual situation and claim alleged." (internal citations and italics omitted)); however, "'an employment discrimination plaintiff need not plead a prima facie case of discrimination' to survive a motion to dismiss," Bing, 959 F.3d at 616 (emphasis added) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002)).

As previously discussed, "[l]iberally construing [the] allegations [in the Complaint and Supplement], [Plaintiff] asserted [race, sex, and age] discrimination in [three] ways," Bing, 959 F.3d at 617, i.e., Defendant (1) failed to hire Plaintiff for a permanent position, (2) improperly disbursed one of her paychecks, as well as her holiday bonus, and (3) terminated her temporary position.[5] "The facts [Plaintiff] pled about [these events] cannot be construed to plausibly state a claim that [s]he was [denied a job, improperly paid, and/or] terminated because of h[er] race[, sex, or age]." Id. The Court therefore should dismiss Plaintiff's federal claims under Federal Rule of Civil Procedure 12(b)(6).[6]

---

[5] The Supplement additionally lists "impeding necessary employment growth, including social networking; and withholding fringe benefits of employment [as among Defendant's] repeated acts of discrimination" (Docket Entry 7-1 at 2), but the Complaint and Supplement contain no factual allegations about any such matters (see Docket Entry 7 at 1-2; Docket Entry 7-1 at 1-8). As a result, the Court should treat that language as nothing more "than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. Nor may Plaintiff sustain a claim based on the Supplement's bald statement that, after Defendant's termination of her temporary position, she experienced "continued unemployment . . . which [she] suspects indicates [the] possibility of her having been 'blacklisted' as a result of [her] pending Complaint" (Docket Entry 7-1 at 7 (emphasis added)). See Bing, 959 F.3d at 616 ("A complaint must contain factual allegations sufficient to raise a right to relief above the speculative level." (emphasis added) (internal brackets, ellipsis, and quotation marks omitted)).

[6] Because Plaintiff's pleadings do not state a plausible claim for race, sex, or age discrimination in relation to Defendant's failure to hire her for a permanent position, the Court need not reach Defendant's alternative argument that "[s]uch a claim exceeds the scope of [Plaintiff's administrative] charge" (Docket Entry 6 at 11), such that "[she] cannot pursue that claim" (id.).

8

Starting with the age discrimination claim(s), "Plaintiff's Complaint [and Supplement] do[] not state what her age is," Jiang v. Duke Univ., No. 1:22CV101, 2023 WL 2161772, at *5 (M.D.N.C. Feb. 22, 2023) (unpublished) (Biggs, J.), and do not set out any "factual allegations regarding . . . the age of any other person identified in the Complaint [and Supplement or] any instances where age was mentioned by any person or in any document," id.; instead, the Complaint and Supplement make "only conclusory assertions that Plaintiff was discriminated against because of her age," id. (See Docket Entry 7 at 1-2; Docket Entry 7-1 at 1-8.) "Because Plaintiff has not made any factual allegations about age . . ., the Court [should] find[] that she has not plausibly alleged that she experienced any discrimination that was on account of her age." Jiang, 2023 WL 2161772, at *5 (emphasis omitted).

Plaintiff's claims of race and sex discrimination fare no better. "While [Plaintiff] did allege that [Defendant] failed to hire her [for a permanent position], she did not allege facts sufficient to claim that the reason it failed to hire her was because of her race or sex." McCleary-Evans, 780 F.3d at 585 (emphasis added). Regarding race and sex, the Complaint and Supplement merely allege that Plaintiff's race (white) differed from the race of others who worked in the OARS Department (including her supervisor and her co-worker hired for the permanent position) and that her sex (female) differed from the sex of her

9

supervisor and her co-worker hired for the permanent position. (See Docket Entry 7 at 1-2; Docket Entry 7-1 at 1-8.) "Only speculation can fill the gaps in [the C]omplaint [and Supplement] – speculation as to why [a male,] non-[white] candidate[] w[as] selected to fill the [permanent] position[] instead of [Plaintiff]." McCleary-Evans, 780 F.3d at 586. Even if the Court assumed that Plaintiff's male, African-American supervisor played a material part in the selection of Plaintiff's male, African-American co-worker for the permanent position (over Plaintiff), that assumed fact would not allow Plaintiff to state a plausible claim for race or sex discrimination: "While the allegation that [a male,] non-[white] decisionmaker[] hired [a male,] non-[white] applicant[] instead of [ P]laintiff is consistent with discrimination, it does not alone support a reasonable inference that the decisionmaker[] w[as] motivated by [race- or sex-based] bias." Id. (emphasis omitted).[7]

"In short, [as to the race- and sex-based, failure-to-hire sub-claim(s), the C]omplaint [and Supplement] 'stopped short of the line between possibility and plausibility of entitlement to

---

7 Additionally, as Defendant's Brief in Support observes, "[the Supplement] admits that [Plaintiff's] co-worker was qualified for the job to which he was hired." (Docket Entry 6 at 16; see also Docket Entry 7-1 at 5 (describing said co-worker as "qualified for that particular permanent position").) Furthermore, the Complaint and Supplement lack factual allegations showing that Plaintiff possessed better qualifications for the permanent position than her co-worker who got it. (See Docket Entry 7 at 1-2; Docket Entry 7-1 at 1-8.)

10

relief.'" Id. (internal brackets omitted) (quoting Iqbal, 556 U.S. at 678); see also, e.g., Wright v. Hertford Cnty. Bd. of Educ., No. 2:23CV30, 2024 WL 85926, at *11 (E.D.N.C. Jan. 8, 2024) (unpublished) ("[S]tacking conclusory allegations of hostility to non-black employees does not get [the plaintiff] across the [plausibility] line. Thus, the court dismisses [this claim] for failure to plausibly allege race discrimination."); Ballew v. United Parcel Serv., Inc., No. 6:18CV59, 2018 WL 5074603, at *5 (D.S.C. Aug. 20, 2018) (unpublished) ("[T]he bare allegation that two male employees were promoted to full-time [] positions [over the female plaintiff] fails to give rise to an inference of gender discrimination."), recommendation adopted, 2018 WL 5043887 (D.S.C. Oct. 17, 2018) (unpublished).

Turning to the aspect of Plaintiff's race and sex discrimination claims predicated on the belated/diminished payment of her wages for one pay-period and the belated payment of her holiday bonus, "[Plaintiff] must sufficiently allege facts to make plausible that [Defendant] discriminated against h[er] with respect to h[er] compensation because of h[er race and/or] sex." Welch v. Blue Cross & Blue Shield of N.C., No. 1:18CV1206339, 2019 WL 1206339, at *4 (M.D.N.C. Mar. 14, 2019) (unpublished) (Tilley, S.J.). "[Plaintiff] has failed to do so. There are no factual allegations [in her pleadings] to support h[er] claim that [Defendant's handling of] h[er] . . . pay was discriminatory." Id.

11

To the contrary, as Defendant's Brief in Support articulates, despite "Plaintiff['s conclusory] alleg[ation] that her single missed[/decreased] paycheck and late holiday bonus payment resulted from discrimination, her pleadings indicate these [events] were mere <u>oversights</u>." (Docket Entry 6 at 18 (emphasis added); <u>see also</u> Docket Entry 7-1 at 2-3 ("When [] Plaintiff discovered that she had not received her usual payroll deposit, she contacted [the] Payroll [Office] at [Defendant] to notify them of the <u>oversight</u> . . . . [] Plaintiff at that time notified the Payroll Office that the missed payroll was not a result of [] Plaintiff's <u>oversight</u> but rather that of [her supervisor]." (emphasis added)), 4 ("[Plaintiff's supervisor] apologized for the <u>oversight</u> . . . ." (emphasis added)), 7 ("Plaintiff noted that she had not received any holiday bonus . . . . When [] Plaintiff contacted the Human Resources Department to notify of the <u>oversight</u>, [she] was informed only that 'some people fell through the cracks.'" (emphasis added)), 8 ("Had [] Plaintiff not brought this <u>oversight</u> to light, [she] would also not have received the $500 holiday bonus . . . ." (emphasis added)).) Moreover, "[a]lthough [the Complaint and Supplement] allege[] that [Defendant] refused [Plaintiff's] repeated requests to be compensated [for the lone instance of lost pay] . . ., there

12

are no allegations that suggest those refusals were because [Plaintiff] is a [white fe]male." Welch, 2019 WL 1206339, at *4.[8]

"It would be difficult even to describe [these] allegations as consistent with discrimination. There is simply no connection between [Plaintiff's race or] sex and h[er] pay . . . . Therefore, [s]he has not sufficiently alleged facts to state a plausible claim of [race or] sex discrimination in violation of Title VII." Id.

Lastly, "[t]he facts [Plaintiff] pled about h[er] termination cannot be construed to plausibly state a claim that [s]he was terminated because of h[er sex or] race." Bing, 959 F.3d at 617. Most tellingly, as the sole support for the "assert[ion] that [Plaintiff's supervisor] and others unfairly and discriminatorily terminated [Plaintiff's] employment on the basis of [her] race[ and] gender" (Docket Entry 7 at 2), the Complaint declares that "[she] was clearly the only White employee in the OARS Department" (id.). But, per the Complaint, that circumstance had existed since Plaintiff's hiring four months earlier. (See id. at 1 (alleging

---

[8] Instead, the Supplement evinces that bureaucratic dysfunction, rather than race- or sex-based discrimination, lay at the root of Defendant's failure to reimburse Plaintiff for the (one-time) underpayment of her wages. (See Docket Entry 7-1 at 4 ("After speaking with both the Payroll Department and Human Resources on several occasions . . ., [] Plaintiff was informed that there was nothing that they could do, acknowledging that this was a 'suboptimal' situation and that they were looking into how the 'Subpay' option might be handled in the future.").) "[Such] bureaucratic negligence, [] as understandably frustrating as that negligence was, [] did not amount to discrimination." Skorupska v. 525 W. 52 Prop. Owner LLC, 625 F. Supp. 3d 90, 97 (S.D.N.Y. 2022).

13

that, during her tenure, "all [who worked in OARS Department] except [Plaintiff were people] of color and clearly African American").) Neither the Complaint nor the Supplement offer a reasonable basis to infer that, after she spent four months working in the OARS Department, Plaintiff's race suddenly caused Defendant to terminate her temporary position (let alone a reasonable basis to infer that her race or the racial make-up of the OARS Department's workforce somehow turned that termination into sex discrimination). (See id. at 1-2; Docket Entry 7-1 at 1-8.)

In addition, the Complaint and Supplement "specifically allege[] a non-racial [and non-sex-based] reason for the termination," Bing, 959 F.3d at 617. (See Docket Entry 7 at 1 (alleging that, after learning about elimination of her position, "[Plaintiff] asked whether there was a problem as [she] had never been reprimanded nor had [she] been put on notice at any point in [her] employment and, in fact, had only received positive feedback," and her supervisor told her "that 'this temporary position is no longer needed'"); accord Docket Entry 7-1 at 6-7.) "[That] termination decision may have been hasty or even unfair, but it was not racially [or sexually] motivated according to [Plaintiff's] own allegations." Bing, 959 F.3d at 617. To sum up:

> [Plaintiff] failed to plead sufficient facts to plausibly claim h[er] termination . . . was racially [or sexually] motivated. Rather than drawing a reasonable inference, [the Court] would have to speculate to fill in the gaps as to [Defendant's] motivation . . . and to disregard the reason given to [Plaintiff] for h[er] termination. Thus,

14

> [Plaintiff's pleadings] do not contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.

Id. at 618 (internal quotation marks omitted).

With all of Plaintiff's federal claims subject to dismissal, the Court should decline to exercise supplemental jurisdiction over any state claims in the Complaint and Supplement.[9] Federal courts may exercise supplemental jurisdiction over certain state claims - even after federal question jurisdiction ceases to exist; however, a court need not maintain supplemental jurisdiction under such circumstances. See 28 U.S.C. § 1367(c)(3); see also Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995) ("[T]rial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished."). "Among the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." Shanaghan, 58 F.3d at 110. "[I]n the usual case in which all federal-law claims are eliminated

---

[9] Defendant construes the Complaint and Supplement as asserting state law claims for breach of contract and wrongful discharge. (See Docket Entry 6 at 23-26.) The record does not establish diversity-of-citizenship jurisdiction over such claims. (See Docket Entry 7 at 2 (listing address in Greensboro, North Carolina, for Plaintiff); Docket Entry 7-1 at 8 (same), 11 (identifying Defendant as "constituent institution of the University of North Carolina," with address in Greensboro, North Carolina, on exhibit attached to Supplement to show Plaintiff's employment by Defendant (all-caps font omitted)).)

15

before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988). Given that this action has not progressed beyond the pleading stage, the Court should decline to exercise supplemental jurisdiction over any state claims brought by Plaintiff. See, e.g., Nance v. City of Albemarle, 520 F. Supp. 3d 758, 802 (M.D.N.C. 2021) (Osteen, J.).

## Conclusion

The Complaint and the Supplement do not state any plausible federal claims and any state claims therein should no longer proceed in this Court.

**IT IS THEREFORE RECOMMENDED** that the instant Motion (Docket Entry 5) be granted in part, in that Plaintiff's federal claims should be dismissed under Federal Rule of Civil Procedure 12(b)(6) and Plaintiff's state claims should be dismissed without prejudice under 28 U.S.C. § 1367(c)(3).

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

January 29, 2024